EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* EDITH BRAUN, acusada y apelante.

*Número:* CR-76-123      *Resuelto:* 31 de marzo de 1977

*Sarah Torres Peralta,* abogada de la apelante; *Roberto Armstrong, Jr., Procurador General,* y *Mario L. Paniagua, Procurador General Auxiliar,* abogados del El Pueblo.

### SENTENCIA

El 28 de marzo de 1975 la apelante utilizó su automóvil para embestir contra una persona ubicada detrás de una verja. Hizo daño a la verja pero no a la persona. Fue denunciada por daños maliciosos y acusada de ataque para cometer homicidio. Fue absuelta en el Tribunal de Distrito en el

---

caso menos grave. El caso grave se ventiló en la Sala de Bayamón del Tribunal Superior. Fue declarada culpable.

Sostiene que habiendo sido absuelta del caso de daños maliciosos no procedía procesarla por el caso de ataque para cometer homicidio.

Tiene razón la apelante. Dispone el Art. 63 del nuevo Código Penal que ". . . un acto u omisión penable de distintos modos por diferentes disposiciones penales, podrá castigarse con arreglo a cualquiera de dichas disposiciones pero en ningún caso bajo más de una. La absolución o convicción y sentencia bajo alguna de ellas impedirá todo procedimiento judicial por el mismo acto u omisión, bajo cualquiera de las demás."

En *González* v. *Tribunal Superior*, 100 D.P.R. 136, 147 (1971), interpretando el Art. 44 del anterior Código Penal, antecesor del actual Art. 63, expresamos "que al aplicar el Art. 44 no deben desmenuzarse los hechos para tratar de establecer delitos separados. Si así se hiciera se frustraría el propósito que dio vida al Art. 44: evitar que se persiga irrazonablemente al ciudadano radicándose acusaciones por delitos distintos que tienen su origen en un solo acto u omisión . . . impedir que sea convicto de violar varias disposiciones del Código con una serie de penas que podrían resultar excesivas."

Surgiendo que un solo acto de la apelante violó dos disposiciones legales y que fue absuelta de una de ellas, era improcedente procesarla por la otra. El Estado debió haberla procesado primero por el caso de ataque para cometer homicidio, pero permitió que se celebrara primeramente el caso menos grave. El Art. 63 le impide procesarla por el caso radicado ante el Tribunal Superior.

Se revoca la sentencia apelada.

Así lo pronunció y manda el Tribunal y certifica el Secretario. El Juez Asociado Señor Irizarry Yunqué emitió opinión

concurrente a la cual se une el Juez Presidente Señor Trías Monge. Los Jueces Asociados Señores Rigau y Torres Rigual se inhibieron.

(Fdo.) Ernesto L. Chiesa

*Secretario*

—O—

Opinión concurrente del Juez Asociado Señor Irizarry Yunqué a la cual se une el Juez Presidente Señor Trías Monge.

San Juan, Puerto Rico, a 31 de marzo de 1977

Concurro con la sentencia del Tribunal, pero creo que debíamos expresarnos más extensamente sobre las cuestiones que en este caso se plantean y adoptar las normas que paso a exponer. Para una mejor inteligencia del asunto, me permitiré exponer en detalle los hechos que han dado margen a los planteamientos que aquí consideramos.

Contra la apelante se presentó una denuncia en el Tribunal de Distrito, Sala de Toa Alta, en que se le imputó el delito de daños tipificado en el Art. 179 del Código Penal adoptado en 1974.[1] La denuncia imputó a la apelante que el 28 de marzo de 1975, a las 12:30 P.M., voluntariamente lanzó un automóvil violentamente contra la residencia de Eva Majewska y destruyó un portón de rejas y parte de una verja de bloques de dicha residencia. Se le celebró juicio en que se presentó como única prueba de cargo el testimonio de Eva Majewska, luego de lo cual el tribunal absolvió a la apelante al acoger el planteamiento de que no se probó a quién per-

---

[1] El delito de daños era designado como "daños maliciosos" en el Código Penal de 1937. En el Código de 1974, aplicable en la fecha en que ocurrieron los hechos a que se refiere la denuncia de este caso, se define el delito imputado así: "Toda persona que destruyere, inutilizare, alterare, hiciere desaparecer o de cualquier modo dañare un bien mueble o inmueble ajeno, será sancionada con pena de reclusión que no excederá de seis meses o multa que no excederá de quinientos dólares, o ambas penas a discreción del Tribunal." Art. 179, 33 L.P.R.A. sec. 4285.

tenecía la casa en que residía la señora Majewska. El testimonio de ella estableció que la casa pertenecía, para la fecha en que ocurrieron estos hechos, al ex esposo de la testigo quien a su vez lo había sido antes de la acusada, y que existía entre la acusada y su ex esposo un pleito sobre los bienes gananciales habidos durante su matrimonio.

A base del mismo episodio a que se refirieron la referida denuncia, juicio y absolución, se formuló acusación fiscal contra la apelante en el Tribunal Superior, Sala de Bayamón, por el delito grave de tentativa de homicidio. La apelante solicitó, antes del juicio, que se desestimara la acusación. Alegó impedimento colateral por sentencia, y haber sido expuesta por los mismos hechos en la causa por daños ante el Tribunal de Distrito. Denegada su solicitud, se le celebró juicio por Tribunal de Derecho luego de renunciar a ser juzgada por jurado. Al igual que en el juicio que se le siguió por el delito de daños, la única prueba presentada contra la apelante fue el testimonio de Eva Majewska, quien declaró lo mismo que en el Tribunal de Distrito, sin diferencia alguna. [2] Reproducido el planteamiento sobre impedimento colateral y doble

---

[2] Así surge de la "Relación del Caso" preparada por el Hon. Edwin Meléndez Grillasca, juez que presidió la vista en el Tribunal Superior, que puede sintetizarse así: Para el 28 de marzo de 1975 la testigo se encontraba en su casa. Vio a la acusada frente a la casa en un automóvil, del cual se bajó al tiempo que profería frases insultantes contra ella. Un hijo de la acusada la agarró y la subió al automóvil. En ese momento la testigo y una hija suya de 22 años de edad se encontraban detrás de la verja de la casa. La Relación del Caso recoge la narración de la testigo de lo que a continuación sucedió, de la manera siguiente: "La acusada manejaba un carro azul Chevelle, luego de entrar al mismo lo prendió, le dio marcha atrás (su carro estaba frente a otro carro), giró a la izquierda gritando 'te voy a matar para que no abuses más de mí,' tiró el carro contra la verja mientras gritaba que la quería matar. Embistió la verja de frente con el carro y tumbó parte de la misma. No hay acera. Que la acusada dio para atrás rápidamente después que embistió la verja, dio gasolina, gritando 'la voy a matar.' Conoce el Chevelle, es como viejo, lo ha visto con frecuencia. Ella la amenazaba cada vez que tenía que denunciarla. No la acusó de alterar la paz. Declaró que en el Tribunal de Distrito declaró lo mismo, que no hay diferencia. La testigo estuvo casada con el ex esposo de la acusada diez años."

exposición al terminar la prueba de cargo, substanciado por prueba documental consistente en la denuncia y la sentencia absolutoria en el caso de daños, fue nuevamente desestimado. La apelante prestó testimonio en su defensa y el tribunal dictó su fallo y la declaró culpable de tentativa de agresión. Contra la sentencia que le impuso $25 de multa ha apelado.

Plantea la apelante ante nos que fue expuesta dos veces en violación de la cláusula constitucional de doble exposición, y que la absolución en el Tribunal de Distrito constituía cosa juzgada y estaba impedido el Tribunal Superior de pasar nuevamente sobre los mismos hechos. Tanto bajo la doctrina de impedimento colateral por sentencia como bajo la cláusula constitucional de doble exposición debió desestimarse la acusación en el Tribunal Superior.

El impedimento colateral por sentencia, denominado *collateral estoppel* en las jurisdicciones norteamericanas, está consagrado estatutariamente en Puerto Rico en el Art. 63 del Código Penal de 1974, adoptado del Art. 44 del derogado Código Penal de 1937. Dice así, copiado de 33 L.P.R.A. sec. 3321:

"Salvo lo dispuesto en la sección siguiente, un acto u omisión penable de distintos modos por diferentes disposiciones penales, podrá castigarse con arreglo a cualquiera de dichas disposiciones pero en ningún caso bajo más de una.

La absolución o convicción y sentencia bajo alguna de ellas impedirá todo procedimiento judicial por el mismo acto u omisión, bajo cualquiera de las demás."

La sección que sigue a ésta, que es la única excepción que reconoce, es el Art. 64, 33 L.P.R.A. sec. 3322, que dice:

"Un acto criminal no deja de ser penable como delito por ser también penable como desacato."

En otras palabras, salvo el caso en que mediante un mismo acto u omisión una persona cometa desacato y al mismo tiempo otro delito, como sería, para ejemplo, que la persona cometiera una agresión en una sala de justicia debidamente

constituida, el Art. 63 constituye un impedimento para que se celebre juicio a una persona por un delito que surja del mismo acto u omisión que diera lugar a otra infracción penal por la que hubiese sido juzgado y absuelto o convicto y sentenciado.

En *González* v. *Tribunal Superior*, 100 D.P.R. 136 (1971), nos enfrentamos a una situación de hechos similar a la del caso ahora ante nos. Una persona se hizo pasar por otra y a base de esa simulación prestó fianza en favor de un detenido. En el documento de fianza hizo constar falsamente, bajo juramento, ser la persona a quien pretendió suplantar como fiador y ser dueño de determinada propiedad inmueble. Fue acusado ante el Tribunal de Distrito por cinco delitos de falsa representación, se declaró culpable y fue sentenciado a pagar $1,000 de multa ($200 en cada caso). También se le formularon cinco acusaciones por perjurio ante el Tribunal Superior, a base de esos mismos hechos. Al revocar las sentencias impuéstales en los cinco casos por perjurio, aplicamos el Art. 44 del entonces vigente Código Penal, equivalente al 63 del actual Código. Con la salvedad. de que en *González* el acusado había sido convicto y sentenciado por los casos ante el Tribunal de Distrito, mientras que en el caso ante nos la apelante fue absuelta en el Tribunal de Distrito, no hay diferencia entre la situación en *González* y la situación que ahora consideramos que justifique un trato distinto. Nótese que el Art. 63 (antes 44) impide un segundo proceso judicial por delito distinto si en el primer proceso, basado en el mismo acto u omisión, el acusado fue absuelto o si fue convicto y sentenciado.

En el caso ante nuestra consideración, la apelante fue absuelta, luego de celebrádole juicio, del delito de daños, a base de una denuncia que tuvo base a su vez en el mismo acto que dio origen a la acusación por tentativa de homicidio, a saber, que lanzó un automóvil en dirección a la testigo Eva Majewska mientras ésta se encontraba parada tras una verja, chocó contra la verja y la destruyó parcialmente.

La intención que tuviera la acusada al embestir con su automóvil en dirección a la verja y a la señora Majewska es irrelevante. Si quiso matar a la señora Majewska y al tratar de hacerlo destruyó una propiedad, podía ser acusada de tentativa de homicidio, o de daños, o de ambos delitos, pero no podía ser juzgada por uno, esperar que fuera absuelta o convicta, y celebrarle un segundo juicio por el otro delito. Eso es precisamente lo que impide la letra clara del Art. 63.

Al dar la razón histórica que explica la adopción de la doctrina de impedimiento colateral por sentencia dijimos en *González,* supra, pág. 141:

"La situación que trata de proteger el Art. 44 no presentaba problema fundamental alguno cuando se redactó la enmienda a la Constitución de los Estados Unidos que proscribe la doble exposición por el mismo delito. En aquel tiempo existían relativamente pocos delitos, claros y definidos. Las acusaciones eran sencillas y precisas. Según pasaban los años y la sociedad rural se convertía en una sociedad urbana e industrializada se multiplicaron los delitos y los estatutos penales se hicieron más abarcadores y técnicos, pudiendo un solo acto violar varias disposiciones penales. [Citas omitidas]. Esto podría resultar injusto y opresivo para el ciudadano. Los tribunales fueron desarrollando varias doctrinas para proteger al acusado del rigor excesivo de la ley. [Citas omitidas.] Una de las doctrinas adoptadas es la del impedimento colateral por sentencia *(collateral estoppel by judgment)*."

Hay, además, otra razón de índole constitucional que no se nos planteó en *González,* y que ahora tenemos que resolver. Se trata de la alegación de la apelante sobre doble exposición, o *double jeopardy,* que es su denominación en inglés.

La Constitución del Estado Libre Asociado dispone en su Art. II, Sec. 11:

"Nadie será puesto en riesgo de ser castigado dos veces por el mismo delito."

Esta disposición proviene de la cláusula de doble exposición de la Constitución federal que en su Enmienda V dispone

que nadie podrá "ser sometido por el mismo delito dos veces a un juicio que pueda ocasionarle la pérdida de la vida o la integridad corporal." (³)

En *Ashe* v. *Swenson*, 397 U.S. 436 (1970), resolvió el Tribunal Supremo federal, con la sola disidencia del Juez Presidente Burger, que la doctrina de impedimento colateral por sentencia está incluida en y es parte de la prohibición contra doble exposición de la Enmienda V, aplicable a los Estados por medio de la Enmienda XIV según resuelto en *Benton* v. *Maryland*, 395 U.S. 784 (1969).

En *Ashe* seis personas que jugaban al *poker* en el sótano de la residencia de una de ellas fueron asaltadas y robadas por varios enmascarados. Cuatro individuos, entre ellos el peticionario Ashe, fueron acusados ante un tribunal del Estado de Missouri, cada uno bajo seis acusaciones separadas por robo, una por cada víctima. Juzgado en uno de los casos, un jurado absolvió a Ashe al tener dudas sobre su identificación. Juzgado nuevamente por el robo a otra de las víctimas, fue convicto por un jurado y su convicción sostenida por el Tribunal Supremo del Estado. Ashe recurrió mediante *habeas corpus* a la correspondiente Corte de Distrito federal y alegó que fue expuesto dos veces por el mismo delito en violación de la Enmienda V. La Corte de Distrito se negó a expedir el auto y fue confirmada por la Corte de Apelaciones para el Octavo Circuito.

El Tribunal Supremo expidió *certiorari* y revocó. Resolvió, como hemos señalado, que la doctrina de *collateral estoppel* es parte de la prohibición contra la doble exposición, aplicable en dicho caso a favor del peticionario Ashe. Hizo la salvedad el Tribunal—pág. 446—que no se trata de si el Estado podía válidamente acusar al peticionario de seis deli-

---

(³) Esta versión en español es la traducción oficial según aparece en el tomo I de L.P.R.A., pág. 183. El texto en inglés es el siguiente: ". . . nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb."

tos separados de robo en cuanto a cada una de las víctimas, o si el acusado podía ser castigado por cada uno, "si hubiese sido convicto en un mismo juicio de robar a las seis víctimas." Lo que está prohibido es que se le celebren juicios separados para cada uno de los casos. Dijo el Tribunal, pág. 447:

"En este caso el Estado ha aceptado francamente que luego de la absolución ¡del peticionario, trató el primer juicio no más que como un ensayo en preparación para el segundo caso: [⁴] 'Sin duda el fiscal pensó que el Estado tenía un caso que podía ser probado en el primer cargo y, cuando perdió, hizo lo que cualquier buen abogado haría—refinó su presentación a la luz de lo acontecido en el primer juicio.'—Sin embargo, esto es precisamente lo que la garantía constitucional prohíbe." (Traducción nuestra.)

Si bien es cierto que la cláusula sobre doble exposición se refiere a un mismo delito, es decir, prohíbe que una persona sea expuesta a ser castigada dos veces *por el mismo delito*, tal concepto—el mismo delito—no significa una misma infracción penal. Sobre este particular se han elaborado dos teorías, una que define ese concepto en términos de "la misma prueba" y otra que lo define en términos de "el mismo acto u omisión". (⁵) Véase, *Ashe* v. *Swenson*, supra, opinión concurrente de los Jueces Brennan, Douglas y Marshall, pág. 451 y siguientes. La norma de "la misma prueba" fue adoptada hace

---

(⁴) La frase en inglés dice: "it treated the first trial as no more than a dry run for the second prosecution."

(⁵) En inglés se denominan estas normas como *the same evidence test* y *the same transaction test*. Hemos adoptado como traducción más ajustada a la segunda norma, la de "el mismo acto u omisión" en vez de "la misma transacción" pues la palabra "transacción" no tiene en español el mismo significado que *transaction*. El término "transacción" está limitado en su definición a "trato, convenio, negocio" (Diccionario de la Real Academia Española, ed. 1970), mientras que *transaction* es más abarcador en inglés, pues además de coincidir en el significado del término "transacción" del español, tiene como sinónimos *"proceeding, action; performance, discharge"*. (Webster, *New International Dictionary of the English Language*, ed. 1954.) Además, debemos ser consistentes con el término del Art. 63 del Código Penal, que aquí aplicamos como parte de la cláusula sobre doble exposición, y que se refiere a "acto u omisión" y no a "transacción".

casi 200 años en Inglaterra en *The King* v. *Vandercomb*, 2 Leach 708, 720; 168 Eng. Rep. 455, 461 (Crown 1796). Allí se dijo que "a menos que la primera acusación sea tal que el acusado pueda ser convicto por prueba de los hechos alegados en la segunda acusación, una absolución de la primera acusación no impedirá la segunda."

La norma de "el mismo acto u omisión,"—*same transaction*—requiere que, "excepto en circunstancias muy limitadas, (6) deben ventilarse en un solo juicio todos los cargos contra un acusado, que nazcan de un mismo acto, suceso, episodio o evento criminal." *Ashe*, supra, pág. 453. Continúa diciendo el Juez Brennan, pág. 454:

"Esta norma de 'el mismo acto u omisión' aplicable al 'mismo delito' no solamente hace cumplir la antigua prohibición contra enfadosos procesos múltiples contenida en la cláusula sobre doble exposición, sino que responde de igual manera al creciente y difundido reconocimiento de que la consolidación en un solo proceso judicial de todas las cuestiones que surgen de un mismo acto o suceso promueve más eficazmente la justicia, la economía y la conveniencia. Las modernas reglas de procedimiento criminales y civiles reflejan este reconocimiento."

El Tribunal Supremo federal no ha decidido aún cuál de las normas mencionadas serviría mejor a la garantía sobre doble exposición de la Enmienda V. Véase Layton, *Criminal Law: The same offense in Oklahoma—Now you see it, now you don't*, 28 Okla. L. Rev. 131, 136 (1975). La tendencia es hacia la adopción de la norma de "el mismo acto u omisión" (*same transaction test*). Así, el American Law Institute, que

---

(6) Se dan como ejemplos: el caso en que, celebrándose o ya celebrado juicio a una persona por determinado delito se descubre que surgieron otros delitos del mismo acto que dio origen al primer proceso; o cuando un mismo tribunal no podría tener jurisdicción sobre todos los delitos imputados; o los casos en que se demuestre que el acusado o El Pueblo sufrirían perjuicio de acumularse varios delitos o acusados en un pliego acusatorio o por la celebración del juicio conjuntamente, que es el caso de la Regla 90 de Procedimiento Criminal. Véanse los escolios 7 y 11, págs. 453 y 455, respectivamente en *Ashe* v. *Swenson*, ya citado.

había adoptado la norma de "la misma prueba" en 1935, la suplantó en 1962, cuando adoptó la de "el mismo acto u omisión". Véase el Código Penal Modelo del A.L.I., Sec. 1.07 (1962). (⁷) De igual manera, los *Standards for Criminal Justice Relating to Joinder and Severance* de la American Bar Association adoptan la norma de "el mismo acto u omisión". ABA Standards, *Joinder and Severance*, Sec. 1.3 (1968). Inglaterra abolió la norma de "la misma prueba" en 1964, en favor de "el mismo acto u omisión". *Connelly* v. *D.P.P.*, AC 1254 (1964); *Ashe* v. *Swenson*, 397 U.S. 436, 454 (opinión Brennan), escolio 10. La mayoría de los escritores también favorecen "el mismo acto u omisión" como la mejor garantía. (⁸)

Tanto las Reglas de Procedimiento Criminal federales como las nuestras favorecen la acumulación de partes y cargos en un mismo juicio. Véanse las Reglas 8(a), 8(b) y 13

---

(⁷) En el Estado de Texas se ha adoptado jurisprudencialmente una norma más exigente aún que la de "el mismo acto u omisión". Allí rige una llamada *carving doctrine*, que podríamos traducir libremente como la doctrina o norma de "trinchar". Consiste la norma, adelantada por primera vez hace un siglo en *Quitzow* v. *State*, 1 Texas Ct. App. 47 (1876), en que por un solo acto no puede acusarse a una persona por más de un delito, es decir, que si un solo acto puede dar margen a varias infracciones de índole penal, el ministerio fiscal tiene derecho a acusar por el más grave de los delitos que dicho acto pueda justificar y por más ninguno. (*The prosecutor has a right to carve as large an offense out of this transaction as he could, yet must cut only once*). Esta doctrina ha sido reafirmada recientemente en *Duckett* v. *State*, 454 S.W.2d 755 (Texas Ct. App. 1970) y en *Price* v. *State*, 475 S.W.2d 742 (Texas Ct. App. 1972), a la luz de *Benton* v. *Maryland* y de *Ashe* v. *Swenson*, ya citados. Véase Baker, *One Transaction—One Conviction: The Texas Doctrine of Carving*, XXV Baylor L. Rev. 623 (1973).

(⁸) Carroway, *Pervasive Multiple Offense Problems—A Policy Analysis*, 1971 Utah L. Rev. 105, 117 (1971); Fisher, *Double Jeopardy, Two Sovereignties and the Intruding Constitution*, 28 U. Chi. L. Rev. 591, 608–10 (1961); Kirchheimer, *The Act, The Offense, and Double Jeopardy*, 58 Yale L.J. 513, 534 (1949); Nota, *Criminal Law—Double Jeopardy— Should "Offense" Be Defined in Terms of Substantive Law?*, 38 Mo. L. Rev. 528, 530 (1973); Nota, *The Protection Against Multiple Trials*, 11 Stan. L. Rev. 735 (1958–39); Layton, *Criminal Law: The Same offense in Oklahoma—Now you see it, now you don't*, 28 Okla. L. Rev. 131, 136 (1975).

federales, y las Reglas 37(a) y 37(b) y 89 nuestras. Véase, además, *Fuentes Morales* v. *Tribunal Superior*, 102 D.P.R. 705 (1974), en que reconocimos como la práctica más recomendable acumular en un mismo pliego acusatorio aquellos delitos que surjan de un mismo evento.

En lo sustantivo, la regla del impedimento colateral por sentencia establecida en el Art. 63 del Código Penal (1974), antes citada, es clara en su adopción de la norma de "el mismo acto u omisión". Al referirse a que un acto u omisión pueda ser penado bajo diferentes disposiciones penales, concluye dicho artículo: "La absolución o convicción y sentencia bajo alguna de ellas impedirá todo procedimiento judicial por *el mismo acto u omisión*, bajo cualquiera de las demás." (Énfasis suplido.)

En resumen, y para concluir, salvo en limitadas circunstancias, todos los delitos que puedan imputarse a una persona y que se originen en el mismo acto u omisión deben litigarse en un mismo juicio contra dicha persona y no por separado. La cláusula de doble exposición de la Constitución no impide que contra una persona se formulen acusaciones por varios delitos que surjan de un mismo acto. Lo que dicha cláusula prohíbe es que se le juzgue más de una vez por hechos delictivos que tengan su origen en el curso de un solo acto criminal.

Por las precedentes consideraciones concurro en que se revoque la sentencia apelada y se absuelva a la acusada.

