NO. 07-05-0282-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JULY 25, 2007

_____

JARED DANIEL LITTRELL,

Appellant

v.

THE STATE OF TEXAS,

Appellee

_____

FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;

NO. 50,983-B; HON. JOHN BOARD, PRESIDING

_____

***Memorandum Opinion***

_____

Before QUINN, C.J., HANCOCK, J., and BOYD, S.J.[1]

Jared Daniel Littrell appeals his convictions for murder, aggravated robbery, and unlawful possession of a firearm by a felon. Through five issues, he contends that 1) the evidence was legally and factually insufficient to support any of the convictions, 2) the convictions violated his right to be free of double jeopardy, 3) the trial court erred in

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2006).

admitting evidence of an extraneous offense, and 4) the trial judge should have recused himself. We affirm the judgment.

## *Background*

On the night of November 9, 2003, Eric Seuss picked up Kissy Stiger, a prostitute, on Amarillo Boulevard and took her to his motel room at the Executive Inn in Amarillo where they engaged in sex. Seuss then drove Kissy back to the Inn of Amarillo. After using cocaine with one of her friends, Kissy went looking for another customer. She encountered her friend Anthony Gilbreath, and they agreed to obtain more drugs after he retrieved his car. While waiting on Gilbreath, appellant, who was driving a loud, older two-toned Chevy pickup truck with a hood ornament of a bulldog, approached Kissy and asked where he could obtain cocaine. Kissy entered the truck, and the two proceeded to drive away. While doing so, they passed Gilbreath and stopped so he too could get in. Around that time, Kissy noticed that appellant had a small gun that fit into the palm of his hand.

Kissy, appellant, and Gilbreath drove around town making several purchases of cocaine. Thereafter, appellant asked if there was anyone they could "jack" or rob. Kissy told him of Seuss who she knew had a large amount of money. They then drove to the Executive Inn to accost him.

According to the record, appellant and Kissy climbed the stairs to Seuss' room, at which point Kissy tried to persuade Seuss to open the door. Thereafter, appellant forced his way into the room and began to fight with Seuss. During the brawl, Kissy grabbed Seuss' wallet, ran from the room, and left the area. Eventually, appellant attempted to flee as well. As he did, Seuss followed. At that point, a gunshot rang out, a .22 caliber bullet

2

struck Seuss in the abdomen, and he fell down a set of stairs outside his room. Appellant then ran to his truck and left. The wound suffered by Seuss proved fatal.

One or more of the hotel guests heard an argument between several men and a woman shortly before the shooting. So too did one or more hear the shooting and see Kissy and a white man wearing a hood flee. The hooded man was also seen entering a two-toned Chevy pickup, which truck had a bulldog ornament on it much like that of appellant's. And, while none of the bystanders testified that they saw a gun, appellant was known to own a .22 caliber handgun small enough to fit within the palm of his hand. Kissy and Gilbreath saw appellant with it shortly before the shooting while others saw appellant with it days earlier.

### *Sufficiency of the Evidence*

Appellant questions the legal and factual sufficiency of the evidence supporting his conviction. His focus lies upon the accomplice witness rule and the circumstantial nature of the case. Simply put, he believes that the only evidence of his guilt was provided by accomplices, and there existed no independent evidence sufficient to corroborate that accomplice testimony. We overrule the points.

It is true that a defendant cannot be convicted upon the testimony of an accomplice unless it is corroborated by other evidence. TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005). In assessing whether this rule was satisfied, we eliminate the accomplice testimony from consideration and examine the record to see if any evidence *tends* to connect the defendant to the commission of the offense. *Solomon v. State,* 49 S.W.3d 356, 361 (Tex. Crim. App. 2001). More importantly, the evidence need not directly link the

3

defendant to the crime or establish his guilt beyond a reasonable doubt. *McDuff v. State,* 939 S.W.2d 607, 613 (Tex. Crim. App. 1997). It need only tend to connect him to it.

Irrespective of whether Kissy or Gilbreath were appellant's accomplices, sufficient independent evidence exists that tends to connect appellant to the crime. It consists of third parties seeing 1) appellant's two-toned pickup truck with its unique bulldog ornament in the motel parking lot whereat Seuss was shot, 2) Seuss at the top of the stairwell facing his assailant who was at the bottom of the stairwell facing Seuss when the shots were fired, 3) the assailant enter appellant's vehicle and drive away after the shooting, and 4) appellant with a small .22 caliber handgun several weeks before the shooting. To this, we add the evidence that Seuss was shot with a .22 caliber firearm. Combined, the sum tends to connect appellant to the robbery and shooting, and because it does, the purported accomplice testimony was indeed corroborated and susceptible to consideration by the jury.

Next, upon consideration of the accomplice testimony, we find evidence illustrating that 1) appellant asked Kissy and Gilbreath if they knew anyone they could rob, 2) appellant journeyed with Gilbreath and Kissy to Seuss' motel room once a robbery plan was concocted, 3) appellant had a small handgun that fit within his palm, 4) appellant forcibly entered Seuss' motel room and fought with Seuss while Kissy took Seuss' wallet and left, 5) appellant was the only member of the group present when the gun play erupted, 6) Seuss was shot with a bullet of the caliber emitted from appellant's handgun, and appellant fled the scene. Collectively, the evidence is both legally and factually sufficient to support appellant's convictions for murder, aggravated robbery, and unlawfully possessing a firearm under the standards pronounced in *Jackson v. Virginia,* 443 U.S. 307,

4

99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), *Watson v. State,* 204 S.W.3d 404 (Tex. Crim. App. 2006), *Zuliani v. State,* 97 S.W.3d 589 (Tex. Crim. App. 2003), and *King v. State,* 29 S.W.3d 556 (Tex. Crim. App. 2000).

### *Double Jeopardy*

Next, appellant argues that his conviction for murder required proof of an aggravated robbery, and, therefore, his conviction for aggravated robbery violated principles of double jeopardy. He also contends that since possession of a firearm by a felon is a lesser-included offense of aggravated robbery, his conviction for it similarly violated concepts of double jeopardy. We overrule the issue.

With regard to the greater/lesser-included offense issue, we note that the authority cited by appellant, *e.g., Ex parte Rodriguez*, 600 S.W.2d 835 (Tex. Crim. App. 1980) and *Ex parte Harris*, 583 S.W.2d 419 (Tex. Crim. App. 1979), dealt with convictions arising from separate causes or proceedings. Since that time, the Court of Criminal Appeals has held that the same double jeopardy concerns do not arise when the multiple offenses are tried in one cause. *Cervantes v. State,* 815 S.W.2d 569, 573-74 (Tex. Crim. App. 1991). The *Cervantes* court stated that double jeopardy was not necessarily implicated merely because the State was required to prove aggravated robbery in order to prove attempted capital murder. *Id.* at 574. All depends upon whether each offense has an element different from the other. *Id.* at 573. And, that exists here.

To prove aggravated robbery as alleged in the indictment, the State had to prove, among other things, the commission of a theft coupled with aggravating circumstances; such was not required to prove either murder or a felon in possession of a firearm. To

5

prove murder, the State had to establish that an act of appellant caused Seuss' death; that element is missing in both the crimes of aggravated assault and a felon possessing a firearm. Finally, in establishing the latter crime, the State had to prove appellant was a felon, and that is not an element of either murder or aggravated robbery. So, the test espoused in *Cervantes* was met and no problems with double jeopardy arose.

Finally, the United States Supreme Court authorities cited by appellant are also inapposite. They either dealt with succeeding prosecutions, *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) and *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), or the levying of consecutive sentences. *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980). Neither circumstance was involved here.

### *Extraneous Offense*

Appellant next complains of the admission into evidence of the testimony of Billy and Jessica Cain which showed that he had been in the possession of a small handgun shortly before the murder of Seuss. He contends the evidence is not relevant to whether he possessed a handgun on November 9 or 10. We overrule the issue.

As previously discussed, the evidence of appellant's prior sightings with a .22 caliber handgun was used to corroborate the testimony of the accomplice witnesses. Evidence of extraneous offenses is admissible for that purpose. *Lawton v. State,* 913 S.W.2d 542, 553 n.9 (Tex. Crim. App. 1995), *overruled on other grounds by Mosley v. State,* 983 S.W.2d 249 (Tex. Crim. App. 1998); *Hernandez v. State,* 52 S.W.3d 268, 282 (Tex. App. – Corpus Christi 2001, no pet.). Moreover, because no eyewitnesses other than those who

6

appellant deemed to be accomplices identified appellant as the assailant, circumstantial evidence like that at issue here was necessary to tie him to the offense. Finally, a great amount of time was not spent in developing the evidence in dispute. Thus, we conclude that the trial court's decision did not evince an instance of abused discretion when tested against the indicia discussed in *Montgomery v. State*, 810 S.W.2d 372 (Tex. Crim. App. 1991).

### *Recusal of Judge*

Finally, appellant claims the trial judge should have recused himself because he made statements that indicated he was prejudiced against appellant. Apparently those statements consisted of its "failure to charge the jury concerning Gilbreath's status as an accomplice witness" and comment that the sentences "should run 'stacked.'" Yet, how those comments evinced any bias or prejudice or otherwise disqualified the trial judge went undeveloped; thus we consider them insufficiently briefed. *See Billy v. State,* 77 S.W.3d 427, 429 (Tex. App.–Dallas 2002, pet. ref'd) (requiring the appellant to provide substantive analysis). We further note that at least with regard to the allusion to stacking the sentences, appellant concedes that he was not harmed. Finally, we note that he did not request any relief or argue that he was entitled to any. Given these circumstances, we overrule the issue.

Having overruled each issue, we affirm the judgment of the trial court.


Brian Quinn
Chief Justice

Do not publish.

7