COURT OF APPEALS

SECOND
DISTRICT OF TEXAS

FORT WORTH

 

NO. 2-09-303-CR

 

 


 
 
 LEON OTIS COLLINS JR.
 
 
  
 
 
 APPELLANT
 
 


 

V.

 


 
 
 THE STATE OF TEXAS
 
 
  
 
 
 STATE
 
 


 

 

------------

 

FROM THE 371ST
 DISTRICT COURT OF TARRANT
COUNTY

 

------------

 

MEMORANDUM OPINION[1]

 

------------

 

I.  Introduction

          A jury convicted Appellant Leon Otis
Collins, Jr. of two counts of sexual assault of a child and one count of
prohibited sexual conduct and assessed his punishment at twenty years’
confinement for each sexual assault count and ten years’ confinement for the
prohibited sexual conduct count.  The
trial court sentenced Collins accordingly, ordering that the sentences for the
sexual assault counts run consecutively. 
In four points, Collins argues that the evidence is legally and
factually insufficient to support his convictions and that he was denied his
state and federal constitutional protections against double jeopardy.  We will affirm.

II.  Factual and Procedural Background

          Chancel Nash was born on November 10,
1985.[2]  She was approximately five years old when her
mother, Dionne, first met Collins.  Dionne and Collins married when Chancel was
nine years old, and the family, including Chancel’s two brothers, moved from
Tyler to Fort Worth.

          Collins began making suggestive
comments to Chancel when she was nine or ten years old.[3]  Chancel reported the comments to Dionne and a
pastor, but they responded that she had probably misunderstood Collins’s statements.
 After some time, Collins continued
making suggestive comments to Chancel and also began making physical contact
with her.[4]

          The contact escalated to sexual
intercourse on a regular basis when Chancel was thirteen or fourteen years old.[5]  Chancel became pregnant for the first time at
age thirteen.  She testified that she was
not having sexual intercourse with anyone but Collins at that time and that she
ended the pregnancy with an abortion.  Collins
resumed having sex with her after she recovered.[6]

          Chancel became pregnant a second time
while she was attending junior high.  She
testified that she was sexually active with other boys at the time, that she did
not know who the father was, and that she had another abortion.

          She became pregnant a third time at
age sixteen.  She testified that Collins
was the father and that she again had an abortion.

          At age seventeen, Chancel became
pregnant a fourth time.  She carried the
baby, C.M., to term because she was told that she would not be able to have any
more children if she continued having abortions.[7]  Chancel thought that her boyfriend, Floyd,
was C.M.’s father, but she also thought that Collins could be the father.  A paternity test confirmed that Collins is
C.M.’s father.[8]

          Collins continued having sex with Chancel
soon after she gave birth to C.M., and she became pregnant a fifth time and had
another abortion.

          Chancel reported what Collins had done
to her the last time that she had an abortion, but she never heard anything
about any ensuing investigation.  Later, Chancel’s
boyfriend, Willie, encouraged her to report Collins’s conduct to the police, which
she did.

          Chancel testified that over the course
of all the sexual assaults, she tried to fight Collins off on only one
occasion.  She stated that her mother and
Collins had made the decisions where she would have the abortions and that they
paid for them.  Chancel testified that
she lied to the clinics about the abuse and that she would tell them that it
was her first or second time to have an abortion.  She told her friend, Kendra, about Collins’s
conduct, and she stated that Dionne also knew about it.  She did not deny that she had sex with other
boys when she was a teenager.

          The jury convicted Collins of two
counts of sexual assault of a child (counts three and four) and one count of prohibited
sexual conduct (count five) but acquitted him of aggravated sexual assault
(count one) and one count of sexual assault of a child (count two).  Collins appeals.

 

 

 

 

III.  Evidentiary Sufficiency

          In his first, second, and third
points, Collins argues that the evidence is insufficient to support his
convictions for sexual assault of a child and for prohibited sexual conduct.[9]

          A.      Standards of Review

          In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the prosecution in
order to determine whether any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772,
778 (Tex. Crim. App. 2007).

          This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the weight and
credibility of the evidence.  See Tex. Code Crim. Proc. Ann. art. 38.04
(Vernon 1979); Brown v. State, 270 S.W.3d 564, 568 (Tex. Crim. App.
2008), cert. denied, 129 S. Ct. 2075 (2009).  Thus, when performing a legal sufficiency
review, we may not re-evaluate the weight and credibility of the evidence and
substitute our judgment for that of the factfinder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).

          When reviewing the factual sufficiency of the evidence
to support a conviction, we view all the evidence in a neutral light, favoring
neither party.  Steadman v. State,
280 S.W.3d 242, 246 (Tex. Crim. App. 2009); Watson v. State, 204 S.W.3d
404, 414 (Tex. Crim. App. 2006).  We then
ask whether the evidence supporting the conviction, although legally
sufficient, is nevertheless so weak that the factfinder’s determination is
clearly wrong and manifestly unjust or whether conflicting evidence so greatly
outweighs the evidence supporting the conviction that the factfinder’s
determination is manifestly unjust.  Steadman, 280 S.W.3d at 246; Watson,
204 S.W.3d at 414–15, 417.  To reverse
under the second ground, we must determine, with some objective basis in the
record, that the great weight and preponderance of all the evidence, although
legally sufficient, contradicts the verdict. 
Watson, 204 S.W.3d at 417. 
Unless we conclude that it is necessary to correct manifest injustice,
we must give due deference to the factfinder’s determinations, “particularly
those determinations concerning the weight and credibility of the
evidence.”  Johnson v. State, 23
S.W.3d 1, 9 (Tex. Crim. App. 2000); see Steadman, 280 S.W.3d at 246.

B.      Legally
and Factually Sufficient Evidence Supports the Convictions

 

          A person commits the offense of sexual assault of a child
if the person intentionally or knowingly causes the penetration of the anus or
sexual organ of a child by any means. 
Tex. Penal Code Ann. § 22.011(a)(2) (Vernon Supp.
2009).  A child is defined in section
22.011 as a person younger than seventeen years of age.  Id.
§ 22.011(c)(1).  A person commits the offense of prohibited
sexual conduct if the person engages in sexual intercourse with another person
the actor knows to be, without regard to legitimacy, the actor’s current or
former stepchild.  Id. § 25.02(a)(2) (Vernon Supp. 2009).

          Count three alleged the offense of sexual
assault of a child as follows:

And it is further
presented in and to said court that the defendant in the County of Tarrant and
State aforesaid on or about the 1st day of January, 2001, did then and there
intentionally or knowingly cause the penetration of the female sexual organ of
[Chancel], a child younger than 17 years of age who was not the spouse of the
said defendant by inserting his penis into her female sexual organ[.]

 

Count four alleged the offense of sexual
assault of a child as follows:

 

And it is further
presented in and to said court that the defendant in the County of Tarrant and
State aforesaid on or about the 1st day of January, 2002, did then and there
intentionally or knowingly cause the penetration of the female sexual organ of
[Chancel], a child younger than 17 years of age who was not the spouse of the
said defendant by inserting his penis into her female sexual organ[.]

 

Count
five alleged the offense of prohibited sexual conduct as follows:

And it is further
presented in and to said court that the defendant in the County of Tarrant and State
aforesaid on or about the 4th day of September, 2003, did then and there
intentionally or knowingly engage in sexual intercourse with [Chancel], a
person the said defendant knew to be his step-daughter[.]

 

          The record demonstrates that Chancel
was born on November 10, 1985. 
Therefore, on or about January 1, 2001, she was fifteen years old, and
on or about January 1, 2002, she was sixteen years old.  Chancel testified that Collins had
intercourse with her on a regular basis beginning when she was thirteen or
fourteen years old and ending when she was nineteen years old.  She described the intercourse as consistent
and testified that Collins had sex with her at least once a month until she was
age seventeen.  Chancel stated that there
was never a year between when the sexual intercourse began and when it ended that
it stopped.  A paternity test revealed
that Collins is C.M.’s father.

          Viewing the evidence in the light most
favorable to the verdict, a rational trier of fact could have found beyond a
reasonable doubt that Collins committed the offenses of sexual assault of a
child as alleged in counts three and four and the offense of prohibited sexual
conduct as alleged in count five.  See Jackson, 443 U.S. at 319, 99
S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  Accordingly, we hold that the evidence is
legally sufficient to support Collins’s convictions.

          Collins contends that Chancel’s
testimony lacked credibility because of “the lateness of her report,” “repeated
denials over the c[o]urse of several years[,]” “so many lies,” and “the
existence of other potential sexual partners.”  He argues that “[t]he lack of credibility is
shown by the jury’s acquittals of the Appellant as to both Counts 1 and 2.”

          Collins’s arguments ignore the factual
sufficiency standard of review, which requires us to defer to the jury’s
determinations concerning
the weight and credibility of the evidence. 
See Johnson, 23 S.W.3d
at 9; see Steadman, 280 S.W.3d at 246. 
Chancel’s testimony regarding exactly when the sexual assaults occurred
was somewhat vague at times, but the jury was free to resolve the conflicts in
the evidence, if any, in favor of the State. 
Further, as the State points out, our review of the sufficiency of the
evidence to support Collins’s convictions for sexual assault and for prohibited
sexual conduct proceeds independent of the jury’s determinations to acquit
Collins of counts one and two.  See U.S. v. Powell, 469 U.S. 57, 67, 105
S. Ct. 471, 478 (1984).

          Viewing all the evidence in a neutral light, favoring
neither party, the evidence supporting Collins’s convictions is not so weak
that the jury’s determinations are clearly wrong and manifestly unjust, nor
does the conflicting evidence so greatly outweigh the evidence supporting the
convictions that the factfinder’s determinations are manifestly unjust.  See Steadman, 280 S.W.3d at 246; Watson,
204 S.W.3d at 414–15, 417.  Accordingly,
we hold that the evidence is factually sufficient to support Collins’s
convictions, and we overrule Collins’s first, second, and third points.

IV. 
Double Jeopardy

          In his fourth point, Collins argues that he was denied his state
and federal protections against double jeopardy because “all count 5 . . .
does is reprosecute [him] for sexual intercourse already alleged in both Counts
3 and 4.”  See U.S. Const. amends V, XIV; Tex. Const. art. I, §
14.  Collins thus raises a multiple-punishments
double jeopardy argument.  The State
responds that Collins failed to preserve this point for appellate review.  We agree.

          Generally, to preserve a double jeopardy claim, a defendant
must object at or before the time the charge is submitted to the jury.  Gonzalez
v. State, 8 S.W.3d 640, 642 (Tex. Crim. App. 2000).  An appellant is excused from the preservation
requirement, however, when (1) the undisputed facts show the double
jeopardy violation is clearly apparent on the face of the record and (2) enforcement
of usual rules of procedural default serves no legitimate state interest.  Id.
at 643.  A double jeopardy
multiple-punishment violation is clearly apparent on the face of the record
when the record affirmatively shows multiple punishments resulting from the
commission of a single act that violated two separate penal statutes, one of
which is, on its face, subsumed in the other. 
Cervantes v. State, 815 S.W.2d
569, 572–73 (Tex. Crim. App. 1991), cert. denied, 502 U.S. 1110 (1992); Hanson v. State, 180 S.W.3d 726, 732–33 (Tex. App.—Waco 2005, no pet.).

          In this case, count three alleged that Collins committed
the offense of sexual assault of a child on or about January 1, 2001; count
four alleged that he committed the offense of sexual assault of a child on or
about January 1, 2002; and count five alleged that he committed the offense of
prohibited sexual conduct on or about September 4, 2003.[10]  The sexual assaults described in counts three
and four and the prohibited sexual conduct described in count five each address
separate incidents and conduct that occurred on distinctly different dates.

          Chancel testified that Collins began having sexual
intercourse with her when she was thirteen or fourteen years old and that the
intercourse stopped when she was nineteen years old.  She stated that Collins had sexual
intercourse with her at least once a month until she reached age seventeen.  She also testified that Collins
“consistently” had intercourse with her from age thirteen or fourteen until
after C.M. was born.  C.M. was born on June 4,
2004, approximately nine months after September 4, 2003.  Collins is C.M.’s father.

          We conclude that it is not clearly apparent on the face of
the record that Collins has suffered multiple punishments for the same conduct
in violation of his state and federal guarantees against double jeopardy.  See
Cervantes, 815 S.W.2d at 572–73; Bracy v. State, No. 05-08-00144-CR, 2009 WL 1364412, at *2 (Tex.
App.—Dallas
May 18, 2009, pet. ref’d) (not designated for publication) (holding that face of
record did not demonstrate a multiple-punishments violation in part because
appellant began sexually molesting his daughter in 2005, continued to do so for
two years, and admitted that he had molested her so many times that he had lost
count).  Thus, Collins has failed to meet
the first prong of the exception to the preservation requirement.  See
Gonzalez, 8 S.W.3d at 643. 
Accordingly, we hold that Collins failed to preserve this point for
appellate review.  We overrule Collins’s
fourth point.

 

 

 

V. 
Conclusion

          Having overruled all four of Collins’s points, we affirm
the trial court’s judgments.

 

 

 

                                                                   BILL
MEIER

                                                                   JUSTICE

 

PANEL: 
DAUPHINOT, GARDNER, and MEIER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  August 31, 2010











[1]See Tex. R. App. P. 47.4.





[2]Chancel was
twenty-three years old at the time of trial.





[3]According
to Chancel, “[Collins] started making comments toward me, like, ‘Can you take a
bath,’ or, ‘What you doing,’ or if he knew that I was undressing, he would open
the door.”





[4]Chancel
testified, “Like I would walk by him too close, he would touch me on my behind,
or he would like grab my arm to get me to stand by him or - - and just the
comments.”





[5]Chancel
testified that when Collins first began having sex with her, he told her that
he had to “check” her for a disease by using his penis to “check” her
vagina.  Afterward, Collins claimed that
by her having sex with him, he had removed the disease from her.





[6]Chancel
testified that the sexual intercourse would occur when her mother was at work
and when her brothers were upstairs or outside.





[7]C.M.
was born on June 4, 2004.





[8]The
DNA test excluded 99.9995% of the population from being C.M.’s biological
father.





[9]Collins
does not specifically identify whether he is raising a legal and factual
sufficiency challenge or only a factual sufficiency challenge.  We will liberally construe Collins’s argument
as raising both a legal and factual sufficiency challenge.





[10]It is well established that the “on or about”
language of an indictment allows the State to prove a date other than the one
alleged in the indictment as long as the date is prior to the presentation of
the indictment and not so remote that prosecution is barred by the statute of
limitations.  Sledge v. State, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997).